IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WELLS FARGO BANK, N.A., )
)
      Plaintiff, )
)
v. )   No. 05 C 5635
)
PAUL SIEGEL, )
)
      Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Paul Siegel's ("Siegel") motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Plaintiff Wells Fargo, N.A. ("Wells") is a national banking association. Wells alleges that Ty-Walk Liquid Sales, Inc. ("Ty-Walk") pledged its accounts receivable, other rights to payment, contract rights, and the proceeds stemming from those rights to Wells as security for loans that were extended to Ty-Walk by Wells. Wells alleges that Ty-Walk ceased doing business in August 2001, and that in June 2003, an order was entered in the Circuit Court of the Sixteenth Judicial Circuit,

1

Kendall County, Illinois, granting Wells possession of the collateral. Wells claims that over $8,000,000 is still outstanding on the loans extended by Ty-Walk. In an attempt to recover some of the loan funds, Wells has brought the instant action to enforce the contractual rights of Ty-Walk that were assigned to Wells as part of the loan agreement.

Wells alleges that Ty-Walk was a grain merchant that marketed grain that was provided by grain producers. Siegel was a grain producer who allegedly entered into a program operated by Ty-Walk that was called the Farmers Marketing Program ("FMP"), under which Wells marketed Siegel's grain. Wells claims that when Ty-Walk ceased doing business, Siegel owed Ty-Walk $380,525 pursuant to the terms of the FMP. Siegel has allegedly refused to pay the balance due. Wells also contends that Ty-Walk provided Siegel with other services on an "open account" totaling $20,678.47, which Siegel allegedly refuses to repay. (Compl. CII, Par. 8). Wells further alleges that Ty-Walk made a loan payment to Commodity Credit Corporation on behalf of Siegel in the amount of $50,758.16, and which Siegel allegedly refuses to repay the sum. (Compl. Par. 8). Wells has brought a three-count complaint, which includes a claim alleging a breach of the FMP (Count I), a claim alleging a failure to pay for the additional services provided by Ty-Walk (Count II), and a claim alleging a failure to repay loans made by Ty-Walk on behalf of Siegel.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946 (emphasis in original). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United*

3

*Phosphorus, Ltd.*, 322 F.3d at 946.

## DISCUSSION

Siegel argues that the court should dismiss this action based on a lack of subject matter jurisdiction. Wells alleges in the complaint that this court has diversity subject matter jurisdiction. (Compl. Par. 3). Diversity jurisdiction exists if "the matter in controversy exceeds the sum or value of $75,000" and the action is "between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). Pursuant to 28 U.S.C. § 1348 ("Section 1348"), "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348.

Wells alleges in the complaint that its principal place of business is in California and that its organization certificate lists South Dakota as the state where Wells carries on its operations. (Compl. Par. 1). Wells contends that it is thus deemed a citizen of both California and South Dakota. Wells alleges that Siegel is a citizen of Illinois. (Compl. Par. 2). Siegel claims that Wells should be deemed a citizen of Illinois. Siegel argues that Wells should be deemed to be "located" in Illinois under Section 1348, since it maintains a branch office in Illinois.

Siegel's interpretation of Section 1348, however, is not consistent with the Seventh Circuit's ruling in *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001). In *Firstar Bank*, the court held that "for purposes of 28 U.S.C. § 1348 a

4

national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate." *Id.* Siegel does not contest Wells' assertion that Wells' organization certificate lists South Dakota as the state where Wells carries on its operations. Siegel admits that "[t]he Seventh Circuit Court of Appeals has ruled that for the purposes of diversity jurisdiction under section 1348 that national banking associations are 'located' in, and thus citizens of, the state of its [sic] principal place of business and the state listed in its organization." (Mot. 2). Siegel also "recognizes that this court is bound to follow the rulings of the Seventh Circuit," but argues that "the latest decision on this issue [in] the Fourth Circuit Court of Appeals has come to a contrary conclusion" and that the Second Circuit has agreed with the Fourth Circuit. (Mot. 2). According to Siegel, the United States Supreme Court has granted *certiorari* in *Wachovia Bank v. Schmidt*, 388 F.3d 414, 418 (4th Cir. 2004), and the oral arguments were set for November 28, 2005. Siegel asks the court in his motion to dismiss to continue his motion until the United Supreme Court rules in *Wachovia*. This court has a responsibility to control its docket and judicial efficiency would not be served if we were to allow this case to stagnate while we await rulings that may or may not impact the Seventh Circuit's position on the issues before us. As the law now stands in this Circuit, we have diversity subject matter jurisdiction in this matter and we shall proceed accordingly. Therefore, we deny Siegel's motion to dismiss. We note, however, that if the United States Supreme Court makes a ruling in

5

*Wachovia* during the pendency of this action that Siegel believes will impact the instant action, upon the filing of an appropriate motion by Siegel, this court will revisit the issues presented in the instant motion and rule accordingly.

## CONCLUSION

Based on the foregoing analysis, we deny Siegel's motion to dismiss.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 15, 2005