# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 05 C 5635 |
| PAUL SIEGEL, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Wells Fargo Bank, N.A.'s ("Wells") motion for summary judgment. For the reasons stated below, we grant in part and deny in part the motion for summary judgment.

## BACKGROUND

Wells alleges that it is a national banking association and that Ty-Walk Liquid Sales, Inc. ("Ty-Walk") pledged its accounts receivable, other rights to payment, contract rights, and the proceeds stemming from those rights to Wells as security for loans that were extended to Ty-Walk by Wells under a loan agreement ("Loan Agreement"). Wells alleges that Ty-Walk ceased doing business in August 2001,

1

and that in June 2003, an order was entered in the Circuit Court of the Sixteenth Judicial Circuit, Kendall County, Illinois, granting Wells possession of the collateral of the Loan Agreement. Wells has brought the instant action to enforce the contractual rights of Ty-Walk that were assigned to Wells as part of the Loan Agreement.

Wells alleges that Ty-Walk was a grain merchant that marketed grain for farmers. Defendant Paul Siegel ("Siegel") is allegedly a grain farmer who entered into a program operated by Ty-Walk that was called the Farmer's Marketing Program ("FMP"), under which Ty-Walk marketed Siegel's grain. Wells contends that Siegel participated in the FMP under the terms of an agreement ("FMP Agreement"). Wells claims that when Ty-Walk ceased doing business, Siegel owed Ty-Walk $380,525 pursuant to the terms of the FMP Agreement and Siegel has refused to pay the balance due. Wells also contends that Ty-Walk provided Siegel with additional goods and services totaling $20,678.47, and Siegel refuses to pay for them. Wells further alleges that Ty-Walk made a loan payment to Commodity Credit Corporation on behalf of Siegel in the amount of $50,758.16, and Siegel refuses to reimburse Ty-Walk.

Wells brought the instant action and includes in its complaint a claim alleging a breach of contract claim based on a breach of the FMP Agreement (Count I), a breach of contract claim based upon the alleged failure to pay for the additional goods and services provided by Ty-Walk (Count II), and a breach of contract claim

based upon the alleged failure to repay the loan payment made by Ty-Walk on behalf of Siegel (Count III). Wells now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Breach of FMP Agreement (Count I)

Wells argues that it is entitled to summary judgment on the breach of contract claim that is based upon a breach of the FMP Agreement. Wells argues that Siegel admitted at his deposition that he willingly entered into the FMP. Siegel argues that there is insufficient evidence that shows he ever formally entered into the FMP or formed a binding agreement with Ty-Walk.

#### A. Evidence that Indicates Participation and Agreement

Wells asserts in its statement of material fact Paragraph number 9 that "[b]eginning in the mid 1990s, Siegel participated in a program offered by Ty-Walk called the 'Farmer's Marketing Program' ('FMP')" and that Siegel's "participation continued up until Ty-Walk closed its doors in August, 2001." (SF Par. 9). Siegel states in response that he admits to using "Ty-Walk's marketing service to hedge his

4

grain production," but states that he did not participate in "any defined marketing 'program' offered by Ty-Walk." (R SF Par. 9). In support of the denial Siegel cites pages 22 to 25 of his deposition transcript. (R SF Par. 9). In the portions of the deposition transcript cited by Siegel he was asked: "when you started in the Farmers Marketing Program, that was the mid '90s, wasn't it, correct?" (Sieg. Dep. 23). Siegel did not deny his participation and instead stated: "I would say so." (Sieg. Dep. 23). Wells has also pointed to evidence that shows that the FMP was intended to "help the farmers use other marketing tools available to help in their marketing, to obtain better prices," (McD. Dep. 8), and Siegel admitted at his deposition that he used Ty-Walk's marketing services to get better prices for his grain. (Sieg Dep. 22-25). Wells also claims that Siegel received monthly statements for his FMP account and that Siegel entered into written "hedge contracts" ("Hedge Contracts") with Ty-Walk. (Reply 5). Although the above evidence indicates that Siegel participated in the FMP and entered into an agreement relating to the FMP, the evidence is not sufficient to conclusively show that Siegel did so.

### B. Evidence that Supports Denial and Absent Facts

Siegel points to evidence that indicates that he did not participate in the FMP or enter into an agreement relating to the FMP. For instance, Siegel points out that at his deposition, although he did not initially deny outright any participation in the FMP, he ultimately explained that the "FMP" he thought he was being questioned

5

about consisted only of "informal meetings" with a Ty-Walk representative. (Sieg. Dep. 25). Siegel testified at his deposition that he and other farmers would informally discuss matters with a Ty-Walk representative who "would make some recommendations . . . ." (Sieg. Dep. 25). Siegel specifically denied at his deposition that he entered into any formal program offered by Ty-Walk. (Sieg. Dep. 25). Siegel also asserts that, although he received some statements at times from Ty-Walk, he did not regularly receive any monthly statements after 1996 containing any language that specified that they were statements for the FMP. (Sieg. Aff. Par. 3). In addition, Siegel points out that the Hedge Contracts referred to by Wells are separate contracts and do not indicate that they were part of the FMP or any other program offered by Ty-Walk. (R SF Par. 15). In fact, Wells itself concedes that the Hedge Contracts were not a part of the FMP and argues that the contracts at least show that "Siegel was familiar with and used hedge contracts" and thus likely understood that he was participating in the FMP. (Reply 5). In addition to the evidence pointed to by Siegel, there are key facts missing from the record that are pertinent for determining whether Siegel entered into a binding agreement regarding the FMP. For instance, the record does not contain any details concerning the precise communications between Siegel and the Ty-Walk representative at the "informal meetings," or when they met, or the circumstances surrounding those meetings.

Whether or not the circumstances surrounding Siegel's "informal meetings"

with Ty-Walk's representative show that the "recommendations" were a part of the services offered under the FMP, and whether Siegel knew or reasonably should have known that he was participating in the FMP and at least impliedly entered into a contract with Ty-Walk is a matter for the trier of fact to determine. Also, whether or not Siegel was untruthful at his deposition concerning his involvement with the FMP is a credibility determination that can only be made by the trier of fact. *See Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 2006 WL 2670342, at *4 (7th Cir. 2006)(quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) for proposition that "[a]t summary judgment, 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder'"). Siegel is entitled to present his version of the facts at trial, as is Wells. It will be up to the trier of fact to determine which side should prevail. Wells is seeking over $380,000 for the alleged breach of the FMP and will need to prove its case at trial before it is entitled to such relief. (W. Mem. 4). Therefore, we deny Wells' motion for summary judgment on Count I.

II. Failure to Pay for Additional Services (Count II)

Wells argues that it is entitled, as a matter of law, to be paid for the additional unpaid goods and services that Siegel purchased from Ty-Walk. Wells contends that, in addition to the FMP Agreement, Siegel entered into a verbal contract with Ty-Walk to purchase goods and services from Ty-Walk ("Goods and Services") and

7

that Siegel owes $20,678.47 for the Goods and Services. According to Wells, the Goods and Services consisted of items and services such as fertilizer, chemicals, spraying, and corn hauling.

### A. Whether Siegel Purchased and Agreed to Pay for Goods and Services

Wells claims that Siegel agreed to pay Ty-Walk for the Goods and Services. Siegel argues that there is insufficient evidence to conclusively show that he entered into an oral contract regarding the Goods and Services. We disagree. Wells asserts in part in Paragraph 22 ("Paragraph 22") of its statement of material facts that "[d]uring May through August 2001, Ty-Walk provided Siegel with certain goods and services on an open account and Siegel agreed to pay for those goods and services." (SF Par. 22). Siegel does not deny that he purchased the Goods and Services or that he agreed to pay for the Goods and Services. (R SF Par. 22). Siegel instead responds to Paragraph 22 by arguing that he believes that he is "current" on his account. (R SF Par. 22). Therefore, pursuant to Local Rule 56.1, in the absence of a proper denial of Paragraph 22 or citation to authority that supports such a denial, Siegel has admitted that he purchased the Goods and Services and that he agreed to pay for the Goods and Services. Local Rule 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *see also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be

admitted pursuant to Local Rule 56.1).

B. Amount Owed for Goods and Services

Siegel also contests the amount owed by him for the Goods and Services. Wells asserts in Paragraph number 23 of its statement of material facts ("Paragraph 23") that "[a]t the time Ty-Walk closed, the amount Siegel owed for those unpaid goods and services provided was $20,678.47." (SF Par. 23).

1. Whether Siegel Already Paid for Goods and Services

Siegel first responds to Paragraph 23 by indicating that he was current on his account for the Goods and Services and, in support of his position, Siegel cites his deposition transcript. (R SF Par. 23). However, at Siegel's deposition he merely indicated that he "thought [he] was current" and Siegel did not show that his belief was based on any substantive evidence. (Sieg. Dep. 87). Siegel was not even knowledgeable concerning the Goods and Services and offered non-committal answers at his deposition concerning the Goods and Services. For example, when asked about topics such as the purchase of the Goods and Services, he responded with answers such as "I am not sure," "I could have," and "most likely." (Sieg. Dep. 87). Thus, Siegel has not pointed to sufficient evidence that indicates that he already paid for the Goods and Services.

## 2. Untrustworthy Nature of Books and Records

Siegel also argues that the amount listed in his account at Ty-Walk of $20,678.47 ("Account") is inaccurate because the figure is based upon Ty-Walk's books and records, which Siegel characterizes as "without credibility." (R SF Par. 23). Siegel did not specify the reason that the court should find the Account to be untrustworthy other than vaguely stating they are untrustworthy "as described above." (R SF Par. 23). Siegel apparently believes that the Account is untrustworthy because Ty-Walk was involved in what Siegel refers to as the "biggest grain elevator scandal ever to hit Illinois" ("Scandal") and because Ty-Walk representatives were convicted of offenses such as forgery and bookkeeping violations. (S. Ans. 3). Siegel apparently believes that the Account should be deemed unreliable due to Ty-Walk's involvement in the alleged Scandal. However, Siegel has failed to point to any evidence that specifically involves the Account. Siegel was given an opportunity to conduct discovery and present a brief in response to Wells' motion for summary judgment. If Siegel disagreed with a portion of the Account then he must have specifically explained why he disagreed and provided support for his position. Siegel cannot simply erase $20,678.47 in debt for Goods and Services that he purchased simply because Ty-Walk was involved in the alleged Scandal. Siegel is not entitled to proceed to the trier of fact and ask the trier of fact to speculate solely on the basis of the alleged Scandal that all of Ty-Walk's records are inaccurate, including the amount listed in the Account. Thus, Siegel has not

pointed to sufficient evidence that shows that Ty-Walk's Account is untrustworthy.

### 3. Foundation of Records

Siegel contends that "[a]bsolutely no foundation or supporting firsthand information is provided in support of plaintiff's claim for money owed by Siegel." (R SF Par. 23). However, the affidavit of Ellen Trach ("Trach Affidavit"), a Senior Vice President at Wells, indicates that Trach has "personal knowledge of the facts contained" in the affidavit. (Trach Aff. Par. 1). Trach references the books and records of Ty-Walk. Siegel has not pointed to any evidence that would call into question Trach's assertions and has not shown that Wells would be unable to present a sufficient foundation for Trach's assertions.

### C. Siegel's Failure to Identify Evidence or Undermine Wells' Evidence

Although Siegel argues that the court should deny the motion for summary judgment on Count II, he has failed to point to sufficient evidence to support his position. In response to Wells' statement of material facts, the only evidence pointed to by Siegel to dispute the amount owed for the Goods and Services is page 87 of his deposition transcript and evidence concerning the alleged Scandal. (R SF Par. 23). As is indicated above, neither piece of evidence is sufficient to create a genuinely disputed fact in regard to the Goods and Services. In Siegel's answer to Wells' motion for summary judgment Siegel fails to identify even one piece of

11

evidence to support his position in regard to the Goods and Services. (S. Ans. 6-7). Siegel admits he purchased the Goods and Services, admits he entered into an oral contract for the Goods and Services, and has not pointed to sufficient evidence to create a triable issue concerning the amount allegedly owed. Wells, on the other hand, has presented documentation showing that Siegel owes the $20,678.47 for the Goods and Services, and Siegel has not pointed to evidence that would call that documentation into question. Therefore, we grant Wells' motion for summary judgment on the breach of contract claim that is based upon the alleged failure to pay for the Goods and Services (Count II).

### III. Loan Payment Made for Siegel (Count III)

Wells argues that Ty-Walk made a loan payment ("Loan Payment") on behalf of Siegel to Commodity Credit Corporation. Specifically, Wells asserts in paragraph 25 of its statement of material facts ("Paragraph 25") that "[o]n September 21, 2000, Ty-Walk made a loan payment on Siegel's behalf to Commodity Credit Corporation in the amount of $50,758.16 with the understanding that Siegel would reimburse Ty-Walk for that payment." (SF Par. 25).

#### A. Whether Ty-Walk Made Loan Payment

Siegel argues in his answer to the motion for summary judgment that the fact that "such payment was made on Paul Siegel's behalf is not substantiated by any

evidence in the record." (S. Ans. 8). However, Siegel points to no evidence that supports his position. (S. Ans. 8). Also, Siegel states in his response to Paragraph 25 that he "admits that Ty-Walk made an advance of $50,758.16 on corn that it was holding for Siegel" and that "[t]his advance was made in the form of a check from Ty-Walk to the Commodity Credit Corporation." (R SF Par. 25). Thus, pursuant to Local Rule 56.1, the fact that Ty-Walk made the Loan Payment on behalf of Siegel is deemed admitted for the purposes of the instant motion for summary judgment and Siegel cannot contest that fact. Furthermore, Siegel also admitted at his deposition that Ty-Walk made the Loan Payment for him. (Sieg. Dep. 89).

### B. Whether Siegel Agreed to Reimburse Ty-Walk

Siegel also argues that even if Ty-Walk made the Loan Payment for him, he never agreed to reimburse Ty-Walk. (R SF Par. 25). At Siegel's deposition he argued that he did not have to reimburse Ty-Walk for the Loan Payment because Ty-Walk was allowed to hold his corn and market it. (Sieg. Dep. 90). Siegel apparently contends that Ty-Walk was somehow reimbursed by a third-party for the Loan Payment when Ty-Walk marketed Siegel's grain. However, Siegel admitted that he had "no idea" if that was actually true. (Sieg. Dep. 90). Siegel stated at his deposition that he believed that he did not owe any money for the Loan Payment because he did not possess any "document that says that [he] owes it." (Sieg. Dep. 92).

13

Wells argues that there is sufficient evidence for the court to conclude as a matter of law that Siegel entered into an oral contract regarding the Loan Payment. We do not agree. While the above evidence shows that Ty-Walk made the Loan Payment on Siegel's behalf, there is insufficient evidence regarding the formation of an oral contract. For instance, there is nothing in the record regarding what was said between Siegel and Ty-Walk representatives regarding the Loan Payment or the surrounding circumstances that would enable the court to assess whether Siegel and Ty-Walk formed an oral contract regarding the Loan Payment. In fact, in regards to the oral contract issue, the only evidence offered by Wells to support its position is Siegel's deposition transcript and the Trach Affidavit. As is indicated above, Siegel stated at his deposition that he did not believe that he owed Ty-Walk for the Loan Payment. (Seig Dep. 90). The other piece of evidence presented by Wells, the Trach Affidavit, merely indicates that "Ty-Walk's books and records reflect that on September 21, 2000, Ty-Walk made a loan payment on Paul Siegel's behalf to Commodity Credit Corporation in the amount of $50,758.16." (Trach. Aff. Par. 11). There is no declaration in the affidavit that indicates that Siegel entered into an oral contract with Ty-Walk or that Siegel agreed to reimburse Ty-Walk for the loan payment. Thus, there is an absence of evidence that would conclusively show that Siegel entered into an oral contact relating to the Loan Payment.

Similar to the issue concerning Siegel's participation in the FMP, there is no obvious reason why Ty-Walk would make loan payments for farmers such as Siegel

and not ensure that the farmers agreed to reimburse Ty-Walk. However, such an inquiry would again draw the court into assessing the credibility of Siegel's denials which can only be assessed by the trier of fact. Thus, whether or not Siegel entered into an oral contract and agreed to reimburse Ty-Walk for the Loan Payment is a genuinely disputed fact. Therefore, we deny the motion for summary judgment on Count III.

## CONCLUSION

Based on the foregoing analysis, we deny Wells' motion for summary judgment on Count I, grant Wells' motion for summary judgment on Count II, and deny Wells' motion for summary judgment on Count III.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 19, 2006